IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-42

 No. COA20-324

 Filed 2 March 2021

 Haywood County, No. 19 000121, 050219

 STATE OF NORTH CAROLINA

 v.

 ANTHONY CAZAL ARNETT

 Appeal by defendant from judgment entered 19 September 2019 by Judge

 Bradley B. Letts in Haywood County Superior Court. Heard in the Court of Appeals

 10 February 2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Tamara
 M. Van Pala, for the State.

 Leslie Rawls for defendant-appellant.

 TYSON, Judge.

¶1 Anthony Cazal Arnett (“Defendant”) appeals from judgments entered after a

 jury returned verdicts finding him guilty of assault with a deadly weapon inflicting

 serious injury (“AWDWISI”) with two aggravating factors and guilty of attaining

 habitual felon status. We find no error.

 I. Background

¶2 Defendant was married to Karen Arnett, the complaining witness in this
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

 matter, for about four years at the time of trial. A few months prior to the events

 underlying these charges, Mrs. Arnett came home from work on 21 November 2018

 and found Defendant at home, drinking. He accused her of cheating on him.

¶3 They got into Defendant’s car and drove to the grocery store. As they drove,

 Defendant struck Mrs. Arnett and took her cellphone. When they arrived at the store,

 Defendant threatened to “stomp her” if she began “showing out.” Mrs. Arnett went

 inside the store and asked the manager to call law enforcement. Defendant was

 charged in the incident, and a court date was set for 23 January 2019.

¶4 Two days prior to trial on 21 January 2019, Mrs. Arnett arrived home from

 work around 3:00 p.m. Defendant was already home and had started drinking

 around 2:30 p.m. Defendant was drinking twenty-five-ounce High Gravity Category

 Five Hurricane beers. The beers are a malt liquor with a content of 8.1 percent

 alcohol. Defendant had ingested three beers prior to his wife arriving home.

 Defendant and Mrs. Arnett drove to the grocery store to purchase food and more beer.

 Defendant had consumed another beer by the time they returned home from the

 grocery store.

¶5 During dinner, Defendant drank yet another beer and started another.

 Defendant then went to a neighbor’s home for marijuana. The neighbor offered

 Defendant Xanax instead, so Defendant took eight Xanax bars. He ingested two of

 them, returned home and sat down to finish his dinner.
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

¶6 Mrs. Arnett testified Defendant’s demeanor had changed when he returned

 home. Mrs. Arnett believed Defendant had “done something else back there besides

 drinking the alcohol.” Defendant stood in their bedroom and threw a beer can. Mrs.

 Arnett telephoned her mother and remained on the phone so Defendant would not

 “put his hands on [her].”

¶7 A few minutes later, as Mrs. Arnett sat on the bed, Defendant came back into

 the bedroom and began assaulting her. He slammed her face against the wall. “[H]e

 took his fist with the rings on and hit me [] in the eye and busted my eye.” Next, “he

 got the knife with the little hook on it and he sat down on top of me and he brought

 it to my throat . . . And then he took it to my chin and cut my chin.”

¶8 Defendant told Mrs. Arnett that she was not going to make it to court on

 January 23. He got a butcher knife from the kitchen and threatened to cut her eyes.

 When Mrs. Arnett put up her hands in defense, Defendant cut her arm and thumb.

 Defendant also punched her repeatedly.

¶9 When Mrs. Arnett got up to go into the bathroom, he kicked her legs and said

 he would break them so she could not go to court. Defendant cut her head and stabbed

 her in the side. Mrs. Arnett testified that Defendant repeatedly punched her in the

 face “so nobody else would look at me.” Defendant hit Mrs. Arnett in the back of the

 head with a CO2 air gun. Around 3:30 a.m., Defendant went to sleep.

¶ 10 Mrs. Arnett woke up in pain around 7:20 a.m. and asked Defendant to take her
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

 to the hospital. She offered to say whatever he wanted. He drove her to the Haywood

 Regional Medical Center emergency room.

¶ 11 Mrs. Arnett told the hospital staff she had fought with three women at the

 Dollar General store. The nurse responded the hospital was required to call law

 enforcement officers. Mrs. Arnett agreed.

¶ 12 Haywood County Sheriff’s deputies Ken Stiles and Randy Jenkins responded

 to the hospital’s call. Deputy Jenkins took Defendant into a separate room. Deputy

 Stiles then asked Mrs. Arnett what happened. She described what Defendant had

 done to her. Deputy Stiles smelled alcohol on Defendant, but he was not slurring his

 words nor stumbling while he was walking.

¶ 13 Defendant was arrested for violating the pretrial release conditions imposed

 from his November 2018 arrest. Upon searching him, deputies found Mrs. Arnett’s

 cellphone, a wallet, and a hook blade pocketknife with fresh blood on it. Deputy

 Stoller transported Defendant to jail.

¶ 14 Mrs. Arnett’s head and cheek were swollen. Both of Mrs. Arnett’s eyes were

 black and blue. She suffered lacerations across her forehead and on her chin. She

 was bruised, and her hands and arms contained cuts. Her nose was broken, and she

 had a stab wound on her abdomen. She had a deep cut in the tendon between her

 thumb and index finger, which required surgery. She remained hospitalized until 24

 January 2019. As a result of her injuries, Mrs. Arnett cannot grasp well with her
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

 hand, which affects her ability to work.

¶ 15 Officers secured and executed a search warrant at the Arnetts’ home. They

 found and collected multiple bloody items from the bedroom and bathroom. In a

 kitchen drawer, they found a bloody knife.

 A. Proceedings in the Trial Court

¶ 16 Defendant was indicted on charges of AWDWISI and attaining habitual felon

 status. The State gave notice of its intent to prove multiple aggravating factors

 related to the assault charge.

¶ 17 Defendant’s trial counsel filed a Notice of Voluntary Intoxication Defense

 stating he would “show [Defendant] could not form the specific intent necessary for

 the crimes charged.” The State submitted a memorandum of law in opposition and

 argued AWDWISI is not a specific intent crime and Defendant’s voluntary

 intoxication is not a valid defense.

¶ 18 The trial court ruled AWDWISI was a general intent crime and the asserted

 defense of voluntary intoxication was not available to Defendant.

 [T]he Court having heard from counsel, would determine
 that in this particular offense, more specifically
 [AWDWISI], which is not the offense of intent to kill, this
 is a general intent crime, there is no specific intent element
 . . . for the charge for which the State is proceeding today,
 the voluntary intoxication is not available to the defendant
 and as such, the Court will abide by, comply with, and
 follow prior North Carolina precedent and not allow the
 defense of voluntary intoxication.
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

¶ 19 Defendant was tried by jury on 16 September 2019. The substantive offense

 of assault and habitual felon status trials were bifurcated.

¶ 20 Defendant’s attorney stated he would admit an element of the physical act of

 the offense, but not Defendant’s guilt because he lacked intent. Defendant told the

 court he understood his attorney would admit an element of the offense. Defendant

 further affirmed he had discussed this strategy with his attorney and agreed with

 this argument.

¶ 21 The trial court inquired of Defendant and his counsel as follows:

 THE COURT: [I]f you’re admitting that the defendant’s
 guilty of the offense, then we have to make a Harbison
 inquiry. . . you need to talk to your client and let me know
 if you’re admitting that you’re guilty or if you are simply
 admitting to some elements of the crime but denying that
 he’s guilty.

 [TRIAL COUNSEL]: Given the jury instructions, Your
 Honor, and the fact that the jury instructions state that to
 find the defendant guilty, he must have intentionally
 assaulted and inflicted serious injury, my interpretation of
 that is that he is not admitting guilt, just some elements.
 And I have discussed that with him.

 THE COURT: Okay. Mr. Arnett, you understand that
 [Defense Counsel] is going to admit that you committed
 some of the elements of the crime for which you stand
 accused, that being [AWDWISI]?

 THE DEFENDANT: Yes, sir.

 THE COURT: And have you discussed that with [Defense
 Counsel]?
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

 THE DEFENDANT: Yes, sir.

 THE COURT: And are you in agreement with that
 strategy?

 THE [DEFENDANT]: Yes, sir.

 THE COURT: And you also understand that while he may
 admit to some elements, he will not be admitting that you
 are, in fact, guilty of that offense?

 THE [DEFENDANT]: Yes, sir.

 THE COURT: And you are an (sic) agreement with that?

 THE [DEFENDANT]: Yes, sir.

¶ 22 Defense counsel focused much of his cross-examination of Mrs. Arnett and the

 investigating officers on proving elements of voluntary intoxication.

¶ 23 Defendant testified in his defense. Trial counsel’s direct examination

 primarily focused on Defendant’s consumption of intoxicants, including Xanax,

 during the afternoon and night of the assaults. Defendant testified that he blacked

 out and did not remember his actions. Defendant maintained, throughout direct and

 cross examinations, that his last memory is a few moments after taking the Xanax

 and he did not remember the later events of that night.

¶ 24 Defendant’s trial counsel made an offer of proof from Dr. Andrew Ewens, an

 expert in toxicology and pharmacology. Dr. Ewens had reviewed and evaluated the

 effects of alcohol and Xanax on Defendant’s actions. In Dr. Ewens’ opinion,

 Defendant’s actions were consistent with alcohol intoxication and paradoxical effects
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

 of Xanax, which could have prevented Defendant from being in control of his actions

 the night of the crimes.

¶ 25 After hearing from Dr. Ewens, the trial court declined to change its ruling to

 exclude the defense of voluntary intoxication and declined to give the jury charge on

 the defense of voluntary intoxication.

¶ 26 Prior to closing arguments, the trial court again inquired of Defendant and his

 counsel in reference to his admissions under Harbison:

 THE COURT: Okay. [Defense Counsel], do you plan on
 making any admissions of guilt pursuant to North Carolina
 versus Harbison in closing?

 [DEFENSE COUNSEL]: Just as a I previously stated,
 Your Honor, that Mr. Arnett does not deny the actual
 physical act; however, does deny per the jury instructions
 that he acted intentionally as to even the overt act itself,
 not just the harm related.

 THE COURT: Okay. And Mr. Arnett, as we discussed
 earlier, you understand [Defense Counsel] would be
 admitting that the assault occurred, he’s just denying that
 you were guilty of it because you did not intend for it to
 occur. Is that correct?

 THE DEFENDANT: That’s correct, sir.

 THE COURT: And you’re in agreement with that?

 THE DEFENDANT: Yes, sir.

 THE COURT: Okay.

 B. Verdicts and Sentence
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

¶ 27 The jury convicted Defendant of AWDWISI and found two aggravating factors

 existed beyond a reasonable doubt. Following the habitual felon trial, the jury found

 Defendant guilty of being a habitual felon.

¶ 28 At sentencing, the trial court found aggravating factors outweighed mitigating

 factors. Defendant was sentenced in the aggravated range to an active term of 120-

 156 months in prison. Defendant timely filed written notice of appeal.

 II. Jurisdiction

¶ 29 Defendant’s right to appeal arises from the final judgments entered. N.C.

 Gen. Stat. §§ 7A–27(b)(1), 15A–1444(a) (2019).

 III. Issues

¶ 30 The issues before this Court are whether: (1) the trial court correctly ruled

 Defendant’s defense of voluntary intoxication did not apply to his assault charge; (2)

 the trial court’s Harbison inquiries were adequate; and, (3) Defendant’s counsel’s

 concession denied him effective assistance of counsel.

 IV. Voluntary Intoxication Defense

¶ 31 The Supreme Court of the United States explained the difference between the

 general intent crimes and specific intent crimes:

 [A] person entered a bank and took money from a teller at
 gunpoint, but deliberately failed to make a quick getaway
 from the bank in the hope of being arrested so that he
 would be returned to prison and treated for alcoholism.
 Though this defendant knowingly engaged in the acts of
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

 using force and taking money (satisfying “general intent”),
 he did not intend permanently to deprive the bank of its
 possession of the money (failing to satisfy “specific intent”).

 Carter v. United States, 530 U.S. 255, 268, 147 L.Ed.2d 203, 215-16 (2000) (internal

 citations omitted).

¶ 32 Voluntary intoxication is a defense only to a crime that requires a showing of

 specific intent. State v. Harvell, 334 N.C. 356, 368, 432 S.E.2d 125, 132 (1993), (citing

 State v. Jones 300 N.C. 363, 365, 266 S.E.2d 586, 586 (1980)). Trial counsel admitted

 the assault but argued to the jury that Defendant had consumed so much alcohol and

 Xanax, he could not intentionally do anything and did not know what he was doing.

¶ 33 AWDWISI is not a specific intent crime. State v. Woods, 126 N.C. App. 581,

 587, 486 S.E.2d 255, 258 (1997). Voluntary intoxication was never a legal defense

 available to Defendant.

 V. Harbison Inquiry

 A. Standard of Review

 Although this Court still adheres to the application of the
 Strickland test in claims of ineffective assistance of
 counsel, there exist circumstances that are so likely to
 prejudice the accused that the cost of litigating their effect
 in a particular case is unjustified. We [] hold that when
 counsel to the surprise of his client admits his client’s guilt,
 the harm is so likely and so apparent that the issue of
 prejudice need not be addressed.
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

 State v. McAllister, 375 N.C. 455, 463, 847 S.E.2d 711, 716 (2020) (alterations,

 citations, and internal quotations omitted) (emphasis supplied).

 B. Harbison

¶ 34 Defendant argues the trial court erred by failing to make an adequate inquiry

 under State v. Harbison, 315 N.C. 175, 337 S.E.2d 504 (1985).

 A defendant’s right to plead not guilty has been carefully
 guarded by the courts. When a defendant enters a plea of
 not guilty, he preserves two fundamental rights. First, he
 preserves the right to a fair trial as provided by the Sixth
 Amendment. Second, he preserves the right to hold the
 government to proof beyond a reasonable doubt.

 ....

 A plea decision must be made exclusively by the defendant.
 A plea of guilty or no contest involves the waiver of various
 fundamental rights such as the privilege against self-
 incrimination, the right of confrontation and the right to
 trial by jury. Because of the gravity of the consequences, a
 decision to plead guilty must be made knowingly and
 voluntarily by the defendant after full appraisal of the
 consequences.

 Id. at 180, 337 S.E.2d at 507 (internal citations, quotation marks and alterations

 omitted). Defendant proffers several cases to support his argument that a Harbison

 violation occurred.

 1. State v. Foreman

¶ 35 The issue in Foreman was whether the defendant “received ineffective

 assistance of counsel when his trial counsel conceded [the [d]efendant’s guilt to
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

 AWDWISI without his knowing and voluntary consent.” State v. Foreman, ___ N.C.

 App. ___, ___, 842 S.E.2d 184, 185 (2020). In Foreman, defendant’s counsel

 introduced a “Harbison Acknowledgement” prior to opening statements. Id. The

 sworn statement was signed by the defendant and his trial counsel, and stated:

 [I], hereby give my informed consent to my lawyer(s) to tell
 the jury at my trial that I am guilty of Assault with a
 Deadly Weapon Inflicting Serious Injury. I understand
 that:

 1. I have a right to plead not guilty and have a jury trial on
 all of the issues in my case.

 2. I can concede my guilt on some offenses or some lesser
 offense than what I am charged with if I desire to for
 whatever reason.

 3. My lawyer has explained to me, and I understand that I
 do not have to concede my guilt on any charge or lesser
 offense.

 4. My decision to admit that I am guilty of Assault with a
 Deadly Weapon Inflicting Serious Injury is made freely,
 voluntarily and understandingly by me after being fully
 appraised of the consequences of such admission.

 5. I specifically authorize my attorney to admit that I am
 guilty of Assault with a Deadly Weapon Inflicting Serious
 Injury.

¶ 36 The trial court found the defendant had, “been advised of his attorney’s

 intention to admit his guilt to [AWDWISI.” Id. at ___, 842 S.E.2d at 187.

¶ 37 The jury found the defendant guilty of assault with a deadly weapon with

 intent to kill inflicting serious injury, attempted first-degree murder, and felonious
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

 breaking and entering. Id. The defendant appealed “alleging he was denied effective

 assistance of counsel because his concession of guilt to AWDWISI was not knowing

 or voluntary.” Id.

¶ 38 This Court held:

 Defendant’s consent to his concession of guilt for
 AWDWISI was knowing and voluntary. Defendant
 confirmed that he understood the ramifications of
 conceding guilt to AWDWISI and that he had the right to
 plead not guilty. Defendant’s counsel filed the Harbison
 Acknowledgment in which Defendant expressly gave his
 trial counsel permission to concede guilt to AWDWISI after
 “being fully appraised of the consequences of such
 admission.” In this case, the facts show that Defendant
 knew his counsel was going to concede guilt to AWDWISI,
 and the trial court properly ensured that Defendant was
 aware of the ramifications of such a concession.

 Id. at ___, 842 S.E.2d at 188.

¶ 39 Here, Defendant was present for two separate Harbison inquires, one at the

 beginning and one at the end of trial. He was addressed personally by the trial court

 both times and confirmed he understood and consented to his counsel’s actions prior

 to any purported admission by his counsel.

¶ 40 Defendant heard the trial court’s ruling that voluntary intoxication would not

 be allowed as a defense to his general intent crime. Trial counsel told the court he

 had discussed this admission of physical acts with his client. The court asked

 Defendant if he understood his attorney would be admitting some elements of the
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

 offense after the trial court had denied the voluntary intoxication defense.

 [DEFENSE COUNSEL]: -- [I]f you look at the jury
 instructions, Your Honor, they do state intentionally.
 Expert witness or not, voluntary intoxication defense or
 not, we still intend to present that defense to the jury.

 THE COURT: You can certainly elicit testimony and Mr.
 Arnett can certainly testify in the manner he deems
 appropriate. And [we’re] just not going to submit as a
 substantive defense to the jury of involuntary intoxication.

¶ 41 Defendant was given an oral explanation of trial counsel’s strategy to admit

 one element of the crime knowing his voluntary intoxication would not suffice as a

 defense. Defendant was directly addressed by the trial court to confirm his

 understanding and agreement to his counsel’s plans and strategy. The Harbison

 inquiries as well as the conversation leading up to them are adequate to show

 Defendant was thoroughly advised and knowingly consented to his attorney’s

 admission to the jury. Foreman does not compel a different result under these facts.

 Id.

 2. State v. Fisher

¶ 42 As the trial court correctly noted, defense counsel can admit an element of a

 charge without triggering a Harbison violation. Our Supreme Court stated:

 “Although counsel stated there was malice, he did not admit guilt, as he told the jury

 that they could find the defendant not guilty.” State v. Fisher, 318 N.C. 512, 533, 350

 S.E.2d 334, 346 (1986).
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

¶ 43 Defense counsel in Fisher stated to the jury:

 You heard [the defendant] testify, there was malice there[,]
 and then another possible verdict is going to say[,] “Do you
 find him guilty of voluntary manslaughter[?] Voluntary
 manslaughter is the killing of a human being without
 malice and without premeditation. It’s a killing. And it also
 has not guilty, remember that too.

 Id. (emphasis supplied).

¶ 44 Our Supreme Court held counsel’s admission in Fisher was “factually

 distinguishable from [the violation in] Harbison in that the defendant’s counsel never

 clearly admitted guilt.” Id. Rather, defense counsel “stated there was malice [and]

 . . . told the jury that they could find the defendant not guilty.” Id.

¶ 45 Like the defendant in Fisher, Defendant’s counsel conceded Defendant had

 committed an element of the crime. Trial counsel told the court he planned to admit

 an element of the offense, but not all of the elements. When asked to clarify, trial

 counsel said he would not deny Defendant’s physical acts but would deny the assault

 was intentional based on Defendant’s not remembering his actions due to voluntary

 intoxication.

¶ 46 Here, trial counsel admitted an element of the assault charge, rather than

 admitting guilt to the charge. Id. The holding in Fisher does not support a reversal

 in this case.

 3. State v. McAllister
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

¶ 47 Our Supreme Court stated in McAllister, “we consider whether Harbison error

 exists when defense counsel impliedly—rather than expressly—admits the

 defendant’s guilt to a charged offense. [It is] our determination that the rationale

 underlying Harbison applies equally in such circumstances.” Id. at 456, 847 S.E.2d

 at 712.

¶ 48 In McAllister, the trial court asked defense counsel if they had a Harbison issue

 prior to opening statements. Id. at 459, 847 S.E.2d at 714. The exchange between

 defense counsel and the court follows:

 THE COURT: Are you expecting to make any [Harbison]
 comments in your opening with regard to admissions?

 [DEFENSE COUNSEL]: Well, Judge, we have a lot to say
 about how and why he was interrogated which may brush
 up against—

 THE COURT: Well, can you get more specific than that.
 Because I want to make sure your client understands that
 the State has the burden to prove each and every element
 of each claim and if you’re going to step into an admission
 during opening then I need to make sure that he
 understands that and he’s authorized you to do that.

 [DEFENSE COUNSEL]: Not in opening, I can stipulate to
 that.

 Id. No discussion related to Harbison took place throughout the remainder of the

 trial. Id. In defense counsel’s closing argument, he made these statements to the

 jury:

 You heard [the defendant] admit that things got physical.
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

 You heard him admit that he did wrong, God knows he did.
 They got in some sort of scuffle or a tussle or whatever they
 want to call it, she got hurt, he felt bad, and he expressed
 that to detectives.

 Id. at 461, 847 S.E.2d at 715. “[T]he jury returned a verdict finding defendant guilty

 of assault on a female and not guilty of all other charged offenses.” Id.

¶ 49 On appeal, our Supreme Court reasoned, “The only logical inference in the eyes

 of the jury would have been that defense counsel was implicitly conceding defendant’s

 guilt as to that charge. Id. at 474, 847 S.E.2d at 723. Further, the Harbison issue

 was never mentioned again throughout the remainder of the trial, and thus the

 Harbison inquiry in McAllister was inadequate. Id.

¶ 50 Here, Defendant did not deny committing the physical acts toward his wife on

 direct testimony, and trial counsel stated he was not denying the acts occurred.

 Unlike the defendant in McAllister, the trial court, defense counsel, and Defendant

 engaged in multiple separate and extensive colloquies, prior to trial and again prior

 to closing arguments, to address Defendant and his counsel’s intent to admit

 Defendant’s physical acts, but not his intent prior to the admission.

¶ 51 Trial counsel stated, “I do have some written [Harbison] forms necessary for

 [Defendant] to sign.” Defendant agreed to the admissions prior to trial and to opening

 and closing statements. Trial counsel did not specifically admit Defendant’s guilt to

 the crime charged. The holding in McAllister does not support error, prejudice, or
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

 reversal under these facts. Id.

 VI. Ineffective Assistance of Counsel

 A. Standard of Review

¶ 52 As noted, Harbison errors may also exist when “defense counsel impliedly—

 rather than expressly—admits the defendant’s guilt to a charged offense.” Id. at 456,

 847 S.E.2d at 712.

 Although this Court still adheres to the application of the
 Strickland test in claims of ineffective assistance of
 counsel, there exist circumstances that are so likely to
 prejudice the accused that the cost of litigating their effect
 in a particular case is unjustified. We [] hold that when
 counsel to the surprise of his client admits his client’s guilt,
 the harm is so likely and so apparent that the issue of
 prejudice need not be addressed.

 Id. at 463, 847 S.E.2d at 716 (emphasis supplied) (alterations, citations, and internal

 quotations omitted)

 B. Analysis

¶ 53 Here, there was no surprise to Defendant of defense counsel’s admissions.

 Defendant testified to the acts which occurred and sought to excuse his culpability

 based upon his voluntary intoxication. The timing, nature, extent, cause and motive

 for Mrs. Arnett’s injuries was never in dispute. A bloody knife with a hooked blade

 was recovered from Defendant’s person at the hospital. A bloody butcher knife was

 found in the kitchen drawer at the Arnetts’ home.
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

¶ 54 The trial court correctly ruled Defendant’s proffered voluntary intoxication to

 mitigate or excuse Defendant’s actions was not available as a defense to the assaults,

 which requires only proof of a general intent. Defendant testified, was cross

 examined, and clearly consented to trial counsel’s acknowledgement of Defendant’s

 actions against his wife to the jury during closing argument. The record shows a

 deliberate, knowing, and consented to trial strategy in the face of overwhelming and

 uncontradicted evidence of Defendant’s guilt. Defendant has failed to show his trial

 counsel’s performance and conduct was deficient. Defendant’s argument is without

 merit and overruled.

 VII. Conclusion

¶ 55 Defendant argues he could not knowingly and understandingly consent to

 counsel’s admitting the assault. Defendant further argues the trial court’s Harbison

 inquiry was inadequate to confirm Defendant understood and knew he was agreeing

 for counsel admit the charged offense and present an invalid defense.

¶ 56 The trial court personally inquired of Defendant on two occasions to ensure he

 understood and agreed with this strategy after the court had denied the involuntary

 intoxication defense and to so instruct the jury. The Harbison inquiry adequately

 established Defendant fully understood his counsel was admitting an element of the

 charge.
 STATE V. ARNETT

 2021-NCCOA-42

 Opinion of the Court

¶ 57 Defendant did not receive ineffective assistance of counsel when his trial

 counsel admitted an element of the charged offense with Defendant’s prior knowledge

 and consent. Defendant received a fair trial free from prejudicial errors he preserved

 and argued. We find no error in the jury’s verdicts or in the judgments entered

 thereon. It is so ordered.

 NO ERROR.

 Judges INMAN and HAMPSON concur.